S. S. McConnell, Superintendent of Banks, *v.* J. T. Moore, *et al.*

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

1. BANKS AND BANKING. INSOLVENCY. BOND OF OF-
FICERS.

If the Superintendent of Banks, upon the examination which he is authorized to make, finds that a bank is in an unsafe condition, or is insolvent, or that it is unable to meet its obligations in the ordinary course of business, is compelled under the statute to demand of the bank or its officers a bond sufficient in amount to protect the depositors or other unsecured creditors. (Post, p. 578.)

Citing: Acts 1913, ch. 20, sections 7, 8 and 9.

2. BANKS AND BANKING. INSOLVENCY. POSSESSION OF
INSTITUTION.

A bank found to be insolvent upon the examination by the Superintendent of Banks, while not absolutely required to make the bond for the security of the depositors, exacted by the Superintendent, upon failing or refusing to give bond, must submit to the penalty of surrendering the possession of the institution for the administration of its assets by the Superintendent of Banks. (Post, p. 578.)

3. BANKS AND BANKING. POSSESSION OF ASSETS.

A bank which has executed the bond demanded of it by the Superintendent, upon his finding it insolvent, etc., is entitled to permission from the Superintendent to continue business; that is the consideration of the bond given for that purpose. And there is no liability on the bond if the bank or its officers are deprived of a reasonable opportunity to conduct the affairs of the bank in such a way as to themselves protect the interest of the depositors and other creditors, which the bond is given to secure. (Post, p. 580.)

4. BANKS AND BANKING. INSOLVENCY. DEMAND FOR BOND.

Although the examiners under the Superintendent may properly demand an additional bond on the day after having taken a bond, if upon further examination a ·condition is disclosed to justify the duty, the first bond should be surrendered to its makers. (Post, p. 580.)

5. BANKS AND BANKING. INSOLVENCY. DEMAND FOR BOND.

When a bond is exacted of the officers and directors of a bank and has been executed, the obligors are entitled to retain custody of the bank for a reasonable time and to have a reasonable opportunity to save the bank, if the Superintendent intends to insist on their liability as bondsmen. What is a reasonable opportunity must be determined in each case as it arises, but where possession of the institution was taken over by the Superintendent the next day, that would not be reasonable opportunity, and the bondsmen are not liable. (Post, p. 580.)

FROM CAMPBELL.

Appeal from the Chancery Court of Campbell County. —HON. J. H. WALLACE, Chancellor.

·JESSE L. ROGERS and ANDERSON & WORD, for complainant, appellee.

FOWLER & FOWLER, for defendant, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit by the Superintendent of Banks upon a bond taken by that official from certain officers and directors of the Jellico Bank & Trust Company to secure

the liabilities of that institution. The bank was taken over by the Superintendent the day after the bond was executed and wound up as an insolvent institution. The assets of the concern were insufficient to pay its debts, hence this suit. There was a decree in favor of the Superintendent by the Chancellor for the amount of the bond ($100,000) and interest. This decree was affirmed by the Court of Appeals. A petition for *certiorari* was filed by certain of the defendant obligors, which was granted, and the case has been argued here.

The Jellico Bank & Trust Company was a small bank located at the town named. On February 23, 1926, two examiners, working under the Superintendent of Banks, entered upon an examination of this bank's affairs. Aided by information which they had acquired on the outside, within a few hours the examiners discovered that there were certificates of deposit amounting to approximately $20,000, that had been issued by the bank and were outstanding, of which no record appeared on the books of the institution. Between two and three o'clock on the afternoon of this day, the examiners called the directors of the bank together, and exacted of the bank and the directors the bond in suit. On the next day, February 24th, the examiners went further into the affairs of the bank and found that more than one-half of the apparent discounts were represented by forged paper, fabricated by the cashier. The examiners then called on the bank and the directors for an additional bond in the sum of $150,000, which demand was refused. By appropriate proceedings, the bank was then taken into custody of the Superintendent for liquidation.

As we understand it, the argument made to sustain the result in the lower courts, is that the law required

the banking authorities to procure the bond sued on, under the circumstances indicated and that, having made the bond, the liability of the obligors, under the law, became absolute, without regard to subsequent events. The obligors insist that the consideration of the bond was that they should be allowed to retain possession of the bank and have an opportunity to work it out of difficulties; that when the bank was taken away from them, the next day after the execution of the bond, the consideration of that instrument failed, and they are discharged from liability. We think this contention is well made.

Section 7 and section 8 of chapter 20 of the Acts of 1913, an Act providing for the supervision of banks, authorize the Superintendent of Banks to appoint examiners to assist him in the performance of his duties and direct that examinations of banks, licensed under the laws of Tennessee, be made from time to time.

(1) Section 9 of the Act requires the Superintendent of Banks, if upon examination, he finds that a bank "is in an unsafe condition or is insolvent or that it is unable to meet its obligations in the ordinary course of business," to take from said bank or its officers or directors, "a good and solvent bond in an amount sufficient to protect its depositors and other unsecured creditors . . . under the penalties hereinafter provided for."

Section 9 further requires the Superintendent of Banks, if upon examination, he finds the officers of the bank have been guilty of misappropriation of the bank's funds, or if any such officers have been guilty of other things enumerated "to take possession of the funds and assets of the bank so as to protect them from waste, etc., . . . under the penalties and provisions of this Act."

(2) Section 9 next provides that if the bank should refuse to make the bond mentioned, or refuse to submit

to examination, or if any officer should refuse to be examined concerning the bank, or if it should appear that any such officer had been guilty of misappropriation or misuse of the bank's funds in his own business, etc., "except when a remedy is otherwise herein provided, it shall be the duty of the Superintendent to file a petition in the chancery court having jurisdiction of the property of the said institution requiring it to show cause within five days why it should not be adjudged and administered as an insolvent institution."

Section 9 then directs that "pending the hearing or the making of said bond, the Superintendent of Banks, or a custodian appointed by him, shall take charge of the affairs of the bank and hold them *in status quo.*"

There is no particular difficulty about the construction of section 9. The Superintendent is compelled to exact the bond of the bank or its officers or directors, when upon examination, he finds the institution in an unsafe condition. The bank and its officers and directors are not, however, absolutely required to execute the bond under such circumstances. They are required to execute the bond "under the penalties hereinafter provided for." That is, "in case said bank shall fail or refuse to make the bond," the Superintendent shall apply to the chancery court to have the concern wound up as insolvent, and, "pending the hearing or the making of said bond," the Superintendent or his appointee shall take charge of the bank.

In other words, the bank or its officers and directors can refuse to make the bond. The penalty for such refusal is the surrender of the institution—nothing more. On the other hand, the bank or its officers and directors can make the bond exacted. In that event, the statute

plainly contemplates that, for the time, possession of the institution shall not be disturbed.

In the bond taken in this case it was recited that "permission from said Superintendent of Banks for the said Jellico Bank & Trust Company, Jellico, Tennessee, to continue business is based on the execution of this bond." The state required no such bond, except as a condition of permission to continue business. As argued by the obligors, permission to continue business was the consideration of the bond. They were free, under the law, to refuse to undertake the obligation, or to enter upon the obligation upon the condition or consideration obviously authorized by the statute.

We are of opinion that when permission to continue business was revoked, the day after the bond was executed, the consideration for that contract failed.

(3) Thompson's-Shannon's Code, section 3215, is as follows:

"The want or failure, in whole or in part, of the consideration of a written contract, may be shown as a defense, total or partial, as the case may be, in an action on such contract, brought by anyone who is not an innocent and *bona-fide* holder."

(4) We do not mean to say that the action of the examiners in demanding an additional bond on the day after they took the first bond was at all improper. Further investigation disclosed the condition of the bank to be such that it was the duty of the examiners to procure an additional bond or close the institution. Upon closing the institution, however, we think the first bond should have been surrendered to its makers.

(5) When a bond is exacted of the officers and directors of a bank, under such circumstances as attended the

execution of the one here sued on, we think the obligors are entitled to retain custody of the bank for a reasonable time and to have a reasonable opportunity to save it, if the Superintendent intends to insist on their liability as bondsmen for indebtedness of the bank previously incurred. We do not undertake to say what would be a reasonable opportunity in all cases. That question must be determined in each case as it arises. We are satisfied the bondsmen had no opportunity in the case before us.

To take this bond on one day and to repudiate the consideration the next day and seek to hold the bondsmen liable is a course of conduct which the State authorities cannot afford to pursue.

The bill herein was not filed on behalf of creditors who permitted the bank to incur obligations on the faith of this bond. The principles of estoppel, of course, would control a suit in behalf of any such creditors as these.

For the reasons stated we think the decree of the Court of Appeals and the decree of the Chancellor were erroneous and a decree will be entered here reversing the action of the lower courts and this bill is dismissed.